1

2

3

4

5

6                          **UNITED STATES DISTRICT COURT**

7                              **DISTRICT OF NEVADA**

8

MICHAEL MCINTOSH et al.,                    )
9                                           )
                    Plaintiffs,             )
10                                          )
          vs.                               )              2:08-cv-01524-RCJ-RJJ
11                                          )
LAS VEGAS METROPOLITAN POLICE               )                    **ORDER**
12  DEPARTMENT et al.,                       )
                                            )
13                  Defendants.             )
    ——————————————————————————              )
14

15          This case arises out of a series of disputes between an apartment complex and two of its

16  residents, including a physical altercation leading to the arrest of one of the residents.  Pending

17  before the Court is a motion to dismiss.  Plaintiffs did not appear at the hearing.  For the reasons

18  given herein, the Court will treat the motion as a motion for summary judgment and grant it.

19  **I.      FACTS AND PROCEDURAL HISTORY**

20          Although the Amended Complaint ("AC") does not make the sequence of events clear,

21  Plaintiffs Michael McIntosh and Kimberly Parme, proceeding *in pro se*, allege the following.

22  On April 8, 2006, while McIntosh was leaving his apartment at Harbor Island Apartments, LLC

23  ("Harbor Island"), 370 E. Harmon Ave., Las Vegas, Nevada, two security guards, one of whom

24  was named "Eric" (phonetic), detained him. (Am. Compl. ¶¶ 1–2, 4, Oct. 23, 2008, ECF No. 1,

25  at 36).  While he was detained, Defendant Michael DeNucci, another of Harbor Island's security

1  guards, appeared and ordered the other guards to handcuff McIntosh, which they did. (*Id.* ¶¶ 2,

2  4).  Plaintiffs allege that they do not know why the guards handcuffed McIntosh. (*See id.* ¶ 4).

3  While McIntosh was handcuffed, DeNucci struck him in the chest with his fist and held his hair

4  while Eric sprayed him with mace. (*Id.*).  The guards then walked McIntosh to the front of the

5  apartment complex and had him lie prone while NeNucci pressed his knee into McIntosh's back

6  and forced McIntosh's face into the grass. (*Id.*).  Plaintiffs allege that McIntosh was never

7  belligerent or uncooperative. (*See id.*).

8          Soon thereafter, an ambulance and police car arrived. (*Id.* ¶ 5).  DeNucci or other Harbor

9  Island employees had reported to Las Vegas Metropolitan Police Department ("LVMPD") that

10  McIntosh had physically beaten Parme, that Plaintiffs had caused a flood in the apartment below

11  theirs, and that Parme was hiding drugs in Plaintiffs' apartment. (*Id.* ¶ 6). Plaintiffs do not make

12  clear whether they mean to allege that DeNucci or other Harbor Island employees related the

13  above information on the date in question in order to summon the police or whether they mean to

14  allege that DeNucci or other Harbor Island employees had related the above information to the

15  police on one or more previous occasions. (*See id.*).  In any case, no one ever filed any written

16  complaint against McIntosh, and the county never filed any charges against him, but he spent

17  over forty-eight hours in the Clark County Jail after his arrest. (*Id.* ¶ 7).  The police arrested and

18  incarcerated McIntosh despite the facts that he had committed no offense in their presence and

19  there was no probable cause to believe he had committed any felony. (*Id.*). Also, one of the

20  officers entered Plaintiffs' apartment without a warrant or permission from either of them, and

21  while Parme was in the shower. (*Id.* ¶ 8).  The officer ordered her out of the shower and

22  questioned her. (*Id.*).  Later, DeNucci entered Plaintiffs' apartment without permission and

23  questioned Parme. (*Id.*).

24          In early April 2006—Plaintiffs do not specify whether before or after the incident related

25  above—Harbor Island contacted Defendant Day & Night Towing, Inc. ("Day & Night") to have

1   two of Plaintiffs' vehicles towed, despite the fact that Plaintiffs were legal residents of the

2   complex, were not delinquent in their rent, and the vehicles were properly plated and registered.

3   (*Id.* ¶ 9).  Harbor Island eventually evicted Plaintiffs, who had been residing there for six-and-a-

4   half years, even though their rent was not delinquent. (*Id.* ¶ 10).  After eviction, Harbor Island

5   "caused Plaintiffs' [personal] property to be destroyed" rather than allow them to recover it as

6   required by law. (*Id.* ¶ 11).  Finally, Defendant Sharon Peterson, an employee of Harbor Island,

7   personally went to Harbor Crossings Apartments, where Plaintiffs had made a cash deposit for a

8   new apartment, and informed Harbor Crossings that Plaintiffs had been evicted for nonpayment

9   of rent. (*Id.* ¶ 12).  Plaintiffs allege that Peterson did this with the intent of causing Harbor

10  Crossings to break its contract with Plaintiffs, but they do not allege whether Harbor Crossings

11  in fact broke its contact as a result. (*See id.*).

12          Plaintiffs sued Defendants in state court.  The AC lists eight causes of action, best

13  characterized as follows: (1) assault and battery (Harbor Island, Denucci, and "Eric"); (2)

14  wrongful eviction (Harbor Island); (3) civil conspiracy - false arrest (LVMPD, J. Liles, K.

15  Blasco, and Harbor Island); (4) false arrest (LVMPD, Liles, and Blasco); (5) conversion (Harbor

16  Island); (6), (8) trespass to chattels (Harbor Island and Day & Night); and (7) intentional

17  interference with contractual relations (Harbor Island and Peterson).  Defendants removed.

18  Plaintiffs stipulated to dismiss all claims against LVMPD and the police officers with prejudice.

19  Because Plaintiffs had taken no action in the case for eighteen months, the Clerk warned

20  Plaintiffs in July 2010 that it would ask the Court to close the case in thirty days for lack of

21  prosecution.  Plaintiffs did not timely respond, but the Clerk made no request to close the case.

22  In June 2011, Plaintiffs filed a notice into the record that they wished to continue to litigate the

23  case.  On September 13, 2011, the magistrate judge held a hearing and gave Plaintiffs thirty days

24  to serve Defendants with the AC.  Harbor Island has been served and has filed a motion to

25  dismiss.  It is not clear whether the remaining Defendants (DeNucci, "Eric," Peterson, and Day

1  & Night) have been served.

2  **II.    LEGAL STANDARDS**

3      **A.    Dismissal for Failure to State a Claim**

4      Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

5  claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of

6  what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47

7  (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action

8  that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule

9  12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578,

10  581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to

11  state a claim, dismissal is appropriate only when the complaint does not give the defendant fair

12  notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v.*

13  *Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a

14  claim, the court will take all material allegations as true and construe them in the light most

15  favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The

16  court, however, is not required to accept as true allegations that are merely conclusory,

17  unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State*

18  *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with

19  conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation

20  is plausible, not just possible. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*,

21  550 U.S. at 555).

22      "Generally, a district court may not consider any material beyond the pleadings in ruling

23  on a Rule 12(b)(6) motion. However, material which is properly submitted as part of the

24  complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

25  *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

1  whose contents are alleged in a complaint and whose authenticity no party questions, but which

2  are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

3  motion to dismiss" without converting the motion to dismiss into a motion for summary

4  judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

5  of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

6  *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

7  considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

8  summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

9  Cir. 2001).

10  **B.  Summary Judgment**

11  A court must grant summary judgment when "the movant shows that there is no genuine

12  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

13  Civ. P. 56(a).  Material facts are those which may affect the outcome of the case. *See Anderson*

14  *v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if

15  there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See*

16  *id.*  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported

17  claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In determining summary

18  judgment, a court uses a burden-shifting scheme:

19  When the party moving for summary judgment would bear the burden of proof at
   trial, it must come forward with evidence which would entitle it to a directed verdict
20  if the evidence went uncontroverted at trial. In such a case, the moving party has the
   initial burden of establishing the absence of a genuine issue of fact on each issue
21  material to its case.

22  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000)

23  (citations and internal quotation marks omitted).  In contrast, when the nonmoving party bears

24  the burden of proving the claim or defense, the moving party can meet its burden in two ways:

25  (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2)

by demonstrating that the nonmoving party failed to make a showing sufficient to establish an

element essential to that party's case on which that party will bear the burden of proof at trial.

*See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden,

summary judgment must be denied and the court need not consider the nonmoving party's

evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party

to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing

party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d

626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment

by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v.

List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions

and allegations of the pleadings and set forth specific facts by producing competent evidence that

shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.  At the

summary judgment stage, a court's function is not to weigh the evidence and determine the truth,

but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The

evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his

favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not

significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III.    ANALYSIS**

Harbor Island has moved to dismiss for untimely service and failure to state a claim.

Harbor Island first argues that it cannot be liable for any of the claims in the AC because it did

not own, operate, or manage the premises during the period of the alleged events.  Harbor Island

claims that it sold the premises to a wholly unrelated third-party entity on March 9, 2005.

Harbor Island also claims that it terminated DeNucci on or about July 6, 2004 and laid off

Peterson on March 9, 2005 when it sold the premises.  Harbor Island provides evidence for these

claims.  First, it provides a deed from Harbor Island and the other tenants-in-common to Related-

Centra Ventures, LLC. (*See* Deed, Mar. 8, 2005, ECF No. 28, at 10).  Second, it provides a

printout of the Clark County Assessor's real property parcel record for the property at 370 E.

Harmon Ave., indicating that the current owners are "Sapirtic LLC et al." (*See* Real Property

Parcel Record, Oct. 17, 2011, ECF No. 28, at 16).  Third, it provides an employer report from

Bigelow Management, Inc. (manager of Harbor Island) indicating that DeNucci was discharged

on July 6, 2004 and could not be rehired. (*See* DeNucci Employee Separations Detail Report,

Oct. 17, 2011, ECF No. 28, at 20).  Fourth, it provides an employer report from Bigelow

Management, Inc. indicating that Peterson was laid off on March 9, 2005. (*See* Peterson

Employee Separations Detail Report, Oct. 17, 2011, ECF No. 28, at 23).  Plaintiff's untimely

response contains no evidence in rebuttal.  The Court will therefore grant the motion as a motion

for summary judgment on the merits without addressing the arguments concerning untimely

service.

LVMPD has joined in Naphcare's motion as to those claims asserted against LVMPD.

The Court grants the motion as against LVMPD, as well.

///

///

///

///

///

///

///

1

**CONCLUSION**

2        IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 28) is GRANTED as a

3 motion for summary judgement.  Naphcare and LVMPS are dismissed as Defendants.

4        IT IS FURTHER ORDERED that because no other Defendants have been served, the

5 Clerk shall enter judgment and close the case.

6        IT IS SO ORDERED.

7 Dated this 31st day of January, 2012.

8

9                                          _____
                                               ROBERT C. JONES
10                                          United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25